# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILLIAN HUGHES, an individual,<br><br>　　　　　　　　　Plaintiff,<br>　v.<br>EQUITY PLUS FINANCIAL, GOLDEN WEST FINANCIAL, FSB, d/b/a WORLD SAVINGS BANK, FSB, WACHOVIA, FSB, WELLS FARGO, N.A., and DOES 1 through 20,<br><br>　　　　　　　　　Defendants. | Case No. 09cv2927 BTM(RBB)<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

Defendant Wachovia Mortgage ("Wachovia") (a division of Wells Fargo Bank, N.A., formerly known as Wachovia Mortgage, FSB, formerly known as World Savings Bank FSB and named herein as "Golden West Financial, FSB, d/b/a World Savings Bank, FSB, Wachovia, FSB, Wells Fargo, N.A.") has filed a motion to dismiss Plaintiff's First Amended Complaint ("FAC") for failure to state a claim. For the reasons discussed below, Wachovia's motion is **GRANTED**.

## I. BACKGROUND

On or about November 16, 2006, Plaintiff obtained a loan in the amount of $540,000 from World Savings Bank, FSB (which changed its name in December, 2007, to Wachovia Mortgage, FSB (Def.'s RJN, Ex. 2)). The purpose of the loan was to refinance Plaintiff's

home located at 993 Via Sinuoso, Chula Vista, CA 91910 (the "Property").  The note was secured by a deed of trust on the Property.

According to the terms of the note, interest was to be paid at the yearly rate of 7.7%. The initial monthly payments were in the amount of $2,064.13.  The monthly payment was scheduled to change on January 1, 2008, and every twelve months thereafter, until the 121st month, which would be the final payment change.

Plaintiff alleges that defendant Equity Plus Financial ("Equity"), Plaintiff's mortgage broker, inflated Plaintiff's income on the loan application without the knowledge of Plaintiff. (FAC ¶ 9.)  According to Plaintiff, although her average monthly income for 2005 was $2,008.17, Equity stated that Plaintiff's monthly income was $11,000.00.  Equity falsely represented to Plaintiff that she was "getting the best and only loan she qualified for." (FAC ¶ 7.)  Equity and World Savings Bank did not ask for proof of Plaintiff's stated income because it would be evidence that Plaintiff was not qualified for the loan. (FAC ¶ 9.) Plaintiff further alleges that Equity did not explain the loan's features to Plaintiff before Plaintiff agreed to the loan.  (FAC ¶ 10.)

Plaintiff claims that she qualified for the loan with a DTI ratio of 36/50, which "exceeds the maximum allowed DTI ratio per all usual and customary underwriting guidelines for ALT-A and/or subprime lending."  (FAC ¶ 16.)  Plaintiff also claims that the DTI was incorrectly calculated by using the lowest payment on the loan instead of the highest payment.  (FAC ¶ 12.)

Additionally, Plaintiff alleges that World Savings Bank paid Equity a broker's fee of $11,528 and a yield-spread premium of $5,400, "which was excessive, not justified, or disclosed to the Plaintiff."  (FAC ¶ 17.)  Plaintiff also alleges that an audit "showed that an accurate Good Faith Estimate, Truth in Lending and RESPA disclosures were not provided to the Plaintiff."  (Id.)

On or about August 5, 2009, Plaintiff sent a letter of rescission to Wachovia.  (FAC ¶ 20.)

Plaintiff's FAC asserts the following claims: (1) intentional misrepresentation; (2)

fraudulent concealment; (3) breach of fiduciary duty (against Equity only); (4) constructive fraud (against Equity only); (5) violation of RESPA, 12 U.S.C. § 2607; (6) quiet title; (7) violation of TILA; and (8) violation of RESPA, 12 U.S.C. § 2605, and accounting.

## II.  STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).  When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] that the pleader is entitled to relief." Ashcroft v. Iqbal, __ U.S. __, 129 S,Ct. 1937, 1950 (2009) (internal quotation marks omitted).

## III.  DISCUSSION

Wachovia moves to dismiss Plaintiff's claims against it for failure to state a claim.  As discussed below, the Court agrees that Plaintiff's claims against Wachovia are deficient.

### A.    Intentional Misrepresentation, Fraudulent Concealment, and Quiet Title Causes of Action

Plaintiff's state claims against Wachovia fail to state a claim because they are preempted by the Home Owners' Loan Act of 1933 ("HOLA"), 12 U.S.C. § 1641, et seq., and

1 the regulations issued thereunder by the Office of Thrift Supervision ("OTS").

2 Through HOLA, "OTS . . . occupies the entire field of lending regulation for federal savings association." 12 C.F.R. § 560.2(a). Section 560.2(b) lists specific types of state laws that are preempted, including:

> [S]tate laws purporting to impose requirements regarding:
>
> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
> . . .
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
> . . .
> (9) Disclosure and advertising, including laws requirement specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants.
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.

State laws are not preempted if they "only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes" of 12 C.F.R. § 560.2(a). 12 C.F.R. § 560.2(c).

In <u>Silvas v. E*Trade Mortgage Corp.</u>, 514 F.3d 1001 (9th Cir. 2008), the Ninth Circuit held that the plaintiff's unfair advertising and unfair competition claims (Cal. Bus. & Prof. Code §§ 17200, 17500), which were based on E-Trade's policy of refusing to refund lock-in fees upon cancellation of a mortgage transaction and E-Trade's alleged misrepresentations regarding consumer rights regarding lock-in fees, were preempted because they fell within § 560.2(b)(9) and § 560.2(b)(5). The <u>Silvas</u> court "did not look merely to the abstract nature of the cause of action allegedly preempted but rather to the functional effect upon lending operations of maintaining the cause of action, as required by paragraph (b). . . . The question was . . . whether an application of a given state law to the activities of federal savings associations would 'impose requirements' regarding the various activities broadly regulated

Case 3:09-cv-02927-BTM-RBB   Document 13   Filed 07/19/10   PageID.227   Page 5 of 12

by the OTS." <u>Naulty v. Greenpoint Mortgage Funding, Inc.</u>, 2009 WL 2870620, at * 4 (N.D. Cal. Sept. 3, 2009).

Plaintiff does not dispute that World Savings Bank was, and Wachovia is, a federal savings association regulated by the OTS pursuant to HOLA. (Def. RJN, Exs. 1-4.) Therefore, the Court must determine whether Plaintiff's state claims are preempted by HOLA.

Plaintiff's claim of intentional misrepresentation alleges that Wachovia consented to qualify Plaintiff for the loan based on the falsely inflated stated income even though Plaintiff was in fact not qualified for the loan. (FAC ¶¶ 23-24.) Plaintiff also alleges that World Savings Bank paid Equity an illegal yield spread premium so that Equity would refer clients like Plaintiff to the bank. (FAC ¶ 28.) According to Plaintiff, World Savings Bank concealed these material facts to induce Plaintiff to enter into the loan. (FAC ¶ 30.)

Plaintiff's claim for fraudulent concealment alleges that World Savings Bank fraudulently concealed knowledge that Plaintiff was not qualified for the loan and used improper underwriting practices to fraudulently qualify Plaintiff for the loan. (FAC ¶ 38.) Plaintiff also alleges that World Savings bank failed to provide accurate disclosures required by federal and state laws. (FAC ¶ 39.)

Plaintiff's quiet title action appears to be based in part upon the theory that Plaintiff has a right to rescind as a result of the intentional misrepresentation and fraudulent concealment.

The Court concludes that Plaintiff's intentional misrepresentation and fraudulent concealment claims are preempted by HOLA. The claims fall within § 560.2(b)(4), (5), (9), and (10), because they directly concern and seek to regulate the terms of credit, the processing and origination of the loan, disclosures, and loan-related fees. <u>See</u> <u>Naulty</u>, 2009 WL 2870620, at * 4 (holding that HOLA preempted plaintiffs' state law claims regarding the terms of credit that Wachovia provided to plaintiffs, disclosures that Wachovia did or did not give to plaintiffs, Wachovia's underwriting standards, and Wachovia's marketing and servicing of the loans); <u>Andrade v. Wachovia Mortgage, FSB</u>, 2009 WL 1111182 (S.D. Cal.

5                                       09cv2927 BTM(RBB)

Apr. 21, 2009) (holding that HOLA preempted plaintiff's state law claims alleging that defendants induced her to enter into the loan through inadequate disclosures and misrepresentations about her ability to pay). The quiet title action is also preempted to the extent it is based on the intentional misrepresentation and fraudulent concealment claims.

### B.    Violation of RESPA, 12 U.S.C. § 2607

Plaintiff alleges that Wachovia violated RESPA, 12 U.S.C. § 2607, by paying Equity an illegal yield spread premium ("YSP") that was not reasonably related to any services provided by Equity. (FAC ¶ 66.)

It appears that Plaintiff's claim is barred by RESPA's one-year statute of limitations. 12 U.S.C. § 2614. Plaintiffs' loan closed in November, 2006. This action was filed on December 30, 2009.

District courts within the Ninth Circuit, have held that RESPA claims are subject to equitable tolling. See, e.g., Ferrari v. U.S. Bank. N.A., 2009 WL 3353028, at *2 (N.D. Cal. Oct. 16, 2009); Brewer v. Indymac Bank, 609 F. Supp. 2d 1104, 1118 (E.D. Cal. 2009). Generally, equitable tolling may be applied "if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th Cir. 2000).

Plaintiff contends that the statute of limitations should be equitably tolled because even if the YSP was disclosed in loan documentation, Plaintiff did not discover that the YSP was being used as a kickback until 2009, when her loan documents were reviewed by mortgage professionals. (Opp. at 5.) However, Plaintiff has not explained why she could not have instigated an investigation regarding the propriety of all aspects of the loan within the limitations period. See Lyman v. Loan Correspondents, Inc., 2009 WL 3757398 (C.D. Cal. Nov. 6, 2009) (holding that plaintiffs had failed to plead a sufficient basis for equitable tolling of their RESPA claim because they offered no explanation as to why they could not have investigated the legality of the YSP within the limitations period). Plaintiff should have known right away that something was amiss when the amount of her initial monthly

payments was more than her monthly income in 2005. It seems that this fact alone would prompt a reasonable person to look into all facets of the loan transaction.

Furthermore, Plaintiff's claim that the YSP was tantamount to an illegal kickback is conclusory. HUD does not consider YSPs to be per se legal or illegal. Geraci v. Homestreet Bank, 347 F.3d 749, 751 (9th Cir. 2003). To determine whether a YSP is reasonable or unreasonable under RESPA, a court is to consider (1) whether goods or facilities were actually furnished or services were actually performed for the compensation paid; and if so, (2) whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed. Id. Although Plaintiff claims that the YSP "was not reasonably related to any services provided by Defendant Equity," Plaintiff does not set forth any *factual allegations* supporting this conclusion. Therefore, Plaintiff has failed to state a claim for violation of 12 U.S.C. § 2607. See Geraci, 347 F.3d at 751-52 (RESPA claim was dismissed because FAC made no specific factual allegations in support of plaintiffs' claim that the YSP was unreasonable); Naulty, 2009 WL 2870620 at * 5 (dismissing RESPA claim for failure to allege any particular basis for finding the use of yield spread percentages to be unlawful or improper).

## C.  **Violation of RESPA, 12 U.S.C. § 2605(e) & Accounting**

Plaintiff alleges that Wachovia violated RESPA, 12 U.S.C. § 2605(e), by failing to provide information in response to a Qualified Written Request.

The provision of RESPA at issue provides:

(e) Duty of loan servicer to respond to borrower inquiries

    (1) Notice of receipt of inquiry

        (A) In general

        If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

        (B) Qualified written request

        For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--

            (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

            (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

    (2) Action with respect to inquiry

    Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

        . . . .

        (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

            (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

            (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e).

      Plaintiff alleges that on or about January 29, 2009, Plaintiff sent a QWR, which sought information including:

    whether or not the loan was in lawful compliance with all federal and state laws regarding disclosure, the identity of all holders of the note secured by the deed of trust, the calculation of the principal and interest, information on the appointment of the trustee and all substitute trustees, documentation of all assignments, transfers or sale of the note, copies of all checks or other evidence of payments made by the Plaintiff, all debits and credits to the Plaintiff's accounts, documentation of all mortgage assignments, accounting of all attorney fees, costs and foreclosure fees, and all late charges assessed to the balance of the loan, an accounting of all monies applied to suspended or forbearance accounts, an accounting of all monies applied to suspended or forbearance accounts, an accounting of all impounds including taxes and insurance and the fees, charges and commissions paid to all servicers of the account.

(FAC ¶ 93.)

Plaintiff alleges that Wachovia "did not fully provide the requested information." (FAC ¶ 94.) Plaintiff does not attach a copy of the request or the response(s).

It is unclear from the FAC whether Wachovia failed to respond to a legitimate QWR. The request itself was ridiculously overbroad and sought all sorts of information pertaining to the note and deed of trust. A QWR must request information regarding the *servicing* of the loan. 12 U.S.C. § 2605e(1)(A). "Servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i). A demand disputing the validity of a loan, not its servicing, does not constitute a QWR. Keen v. American Home Mortgage Servicing,Inc., 2009 WL 3380454, at * 7 (E.D. Cal. Oct. 21, 2009).

Much of the information sought by Plaintiff does not pertain to the servicing of the loan. Although Plaintiff probably would be entitled to payment and balance information and information regarding the calculation of principal and interest, Plaintiff would not be entitled to information regarding whether the loan was in compliance with all federal and state laws regarding disclosure, the identity of all holders of the note, information on the appointment of the trustee and all substitute trustees, documentation of all assignments, transfers, or sale of the note, or documentation of all mortgage assignments. Based on Plaintiff's allegation that Wachovia "did not fully provide the requested information," the Court cannot determine whether Wachovia failed to adequately respond to legitimate inquiries or whether Wachovia just refused to respond to Plaintiff's request for information to which she was not entitled.

It is also unclear what Plaintiff means when she says that Wachovia "did not fully provide the requested information." Under the statute, in lieu of providing the requested information, the servicer can provide an explanation of why the information requested is unavailable or cannot be obtained by the servicer, and the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower. 12 U.S.C. § 2605(e)(2)(C). Accordingly, the failure to provide

1 requested information does not necessarily violate Section 2605(e).

2 Plaintiff has not alleged sufficient facts to establish a violation of 12 U.S.C. § 2605(e).
3 Therefore, Plaintiff's claim is dismissed. Plaintiff's accounting claim, which is based on the
4 violation of 12 U.S.C. § 2605(e), also fails.

**D. Violations of TILA**

**1. Rescission**

Plaintiff alleges that World Savings Bank failed to provide her with two copies of the Notice of Right to Cancel. Under TILA, borrowers ordinarily have three business days to rescind a consumer loan that uses their principal dwelling as security. 15 U.S.C. § 1635(a). However, if a lending institution fails to deliver two copies of the notice of the right to rescind, the borrower may rescind the loan within three years after it was consummated. 15 U.S.C. § 1635(f).

Although Plaintiff alleges that World Savings Bank did not provide her with two "Right to Cancel" forms, Wachovia has provided the Court with a copy of a document titled "Notice of Right to Cancel." (Def. RJN, Ex. 7.) At the bottom of the document is a box containing the following text:

> **ACKNOWLEDGEMENT OF RECEIPT OF COPIES**
>
> **BY MY SIGNATURE WHICH FOLLOWS**, I acknowledge that I received two copies of this Notice of Right to Cancel to keep (plus one to sign and return to World)

Below this text is a signature of Lillian C Hughes dated November 16, 2006.

Plaintiff does not challenge the authenticity of this document, which shows that in fact Plaintiff did receive copies of the Notice of Right to Cancel.[1] Therefore, Plaintiff's attempt

---

[1] A document is not "outside" the complaint for purposes of a Rule 12(b)(6) motion if the complaint specifically refers to the document and if its authenticity is not questioned. Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). Because the complaint refers to the notice of right to cancel, or lack thereof, and Plaintiff does not dispute the authenticity

to rescind was untimely, and Plaintiff's rescission claim fails.  Plaintiff's quiet title claim also fails to the extent it is based on rescission under TILA.

### 2. HOEPA Disclosures & Violations

Plaintiff alleges that World Savings Bank failed to make certain disclosures required by HOEPA and Regulation Z.  (FAC ¶ 85.)  However, Plaintiff has not alleged any facts showing that HOEPA applies to Plaintiff's loan.

To be subject to HOEPA a mortgage must have an APR that will "exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor," or total points and fees payable by the consumer that exceed the greater of 8 percent of the total loan amount or $400.  The FAC does not contain any factual allegations establishing that HOEPA applies.

Plaintiff also alleges that World Savings Bank violated HOEPA, 15 U.S.C. § 1639(h), by extending credit without regard to the consumer's ability to pay.  This claim also fails due to the lack of allegations establishing HOEPA's applicability.

Furthermore, Plaintiff's HOEPA claims are barred by TILA's one-year statute of limitations.  15 U.S.C. § 1640(e).  Although equitable tolling of TILA cases is available in some cases, see King v. State of California, 784 F.2d 910, 915 (9th Cir. 1986), Plaintiff has not alleged any facts suggesting that the doctrine of equitable tolling is applicable here.  Plaintiff has not alleged that World Savings Bank engaged in conduct to prevent Plaintiff from discovering her claim.  "In order for the doctrine of equitable tolling to be applied in a TILA action, the Plaintiff must show that his creditor fraudulently concealed the violation." Kelley v. Galveston Autoplex, 196 F.R.D. 471, 478 (S.D. Tex. 2000).  See also Hubbard v. Fidelity Federal Bank, 91 F.3d 75, 79 (9th Cir. 1996) (holding that one-year statute of limitations was not tolled as to initial TILA disclosures because "nothing prevented [plaintiff]

---

of the document, the Court may properly consider it in deciding this motion.  See Curcio v. Wachovia Mortgage Corp., 2009 WL 3320499, at * 6 (S.D. Cal. Oct. 14, 2009) (dismissing TILA rescission claim based on signed acknowledgment on Notice of Right to Cancel).

from comparing the loan contract, Fidelity's initial disclosures, and TILA's statutory and regulatory requirements."). During the limitations period, nothing prevented Plaintiff from looking into whether World Savings Bank made all of the required disclosures. Similarly, there is no apparent reason why Plaintiff could not have timely discovered her claim that credit was extended without regard to her ability to pay. Indeed, according to the facts alleged in the FAC, it was immediately apparent that the monthly payments on her loan exceeded her 2005 monthly income.

### IV. CONCLUSION

For the reasons discussed above, Wachovia's motion to dismiss the First Amended Complaint is **GRANTED**. Plaintiff's claims against Wachovia (sued as "Golden West Financial, FSB, d/b/a World Savings Bank, FSB, Wachovia, FSB, Wells Fargo, N.A.") are **DISMISSED** for failure to state a claim. The Court grants Plaintiff leave to file an amended complaint within 15 days of the entry of this Order.

The Court also **ORDERS** Plaintiff to show cause why this case should not be dismissed against Equity Plus Financial for failure to serve it with the summons and complaint within 120 days of the filing of this action. Plaintiff's response to the OSC is due on or before **August 2, 2010**. The Court calendars the OSC for hearing on **August 6, 2010 at 11:00 a.m.** Unless otherwise directed by the Court, there shall be no oral argument, and no personal appearances are necessary.

**IT IS SO ORDERED.**

DATED: July 19, 2010

_____
Honorable Barry Ted Moskowitz
United States District Judge